**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**MARK EVERETT WATSON**
Watson Law Office
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

FILED
Feb 08 2012, 9:55 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

KEVIN M. TIMKO,                    )
                                   )
    Appellant-Defendant,           )
                                   )
        vs.                  )    No.  84A05-1104-CR-228
                                   )
STATE OF INDIANA,                  )
                                   )
    Appellee-Plaintiff.            )

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable John T. Roach, Judge
Cause No. 84D01-1001-FA-172

February 8, 2012

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Kevin M. Timko appeals his convictions for two counts of Child Molesting,[1] a class A felony, two counts of Criminal Deviate Conduct,[2] a class A felony, and Child Exploitation,[3] a class C felony. Specifically, Timko argues that the evidence was insufficient to support the convictions and that double jeopardy principles bar both criminal deviate conduct convictions. Timko also maintains that the trial court erred in designating him as a credit restricted felon[4] and that he was improperly sentenced.

We conclude that the evidence was sufficient to support the convictions, that double jeopardy principles were not violated, and that Timko was properly sentenced. However, we find that the trial court erred in determining that Indiana Code section 35-50-6-3(d), the credit restricted felon statute, applied to him that entitled him to one day of credit time for every six days that he is imprisoned for a crime or confined awaiting trial or sentencing. Thus, we remand this cause to the trial court with instructions that it correct the judgment and recalculate the credit time to which Timko is entitled.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions.

<u>FACTS</u>

---

[1] Ind. Code § 35-42-4-3(a)(1).

[2] I.C. § 35-42-4-2(a)(2).

[3] I.C. § 35-42-4-4(b)(1).

[4] Ind. Code § 35-50-6-3(d).

On October 8, 2005, Timko and his then wife, Dawn, were living at their residence in Vigo County. Dawn's sister was a godmother to twin girls, A.V. and B.V., who were eight years old at the time. The girls frequently spent the night with the Timkos, and referred to Timko as their uncle.

Sometime on October 8, Timko crushed some Xanax and placed it in juice that he gave to each of the girls. The girls recalled that the juice Timko sometimes gave them had a "nasty" taste to it. Tr. p. 417-18, 428-29. After the girls became unconscious from the Xanax, Dawn performed oral sex on them and inserted her finger into their vaginas. Timko filmed Dawn as she performed these actions on the girls. At some point, Dawn operated the video camera while Timko performed oral sex on the girls.

A.V. awoke during the episode, startled and confused. Her underwear had been pulled down and Timko was standing next to her and attempting to place her hand on his penis. Dawn entered the room and told A.V. that she had urinated in her pants and that Timko was trying to change her underwear for her. However, A.V. knew that Dawn was lying because her underwear had not been fully removed and it was dry.

A.V. told both her sister and her mother what had occurred. When confronted, Dawn and Timko told the girls' mother that A.V. had only been dreaming. A.V. refused to return to stay with Dawn and Timko again, but B.V. spent the night on at least one other occasion after this incident.

Sometime during the final months of 2009, Timko and Dawn dissolved their marriage when it was discovered that Dawn was having an extramarital affair. Timko

3

became angry at Dawn and threatened her with the video recording of her molesting the girls.

In late December 2009, Timko gave an edited video containing only images of Dawn molesting the girls to a friend whose father worked for the Terre Haute Police Department. However, sometime before giving it to the police, Timko edited the video and removed portions of it where he was visible. Timko retained a second copy of the edited video for himself. On December 28, 2009, two of the police officers viewed the DVD that appeared to contain child pornography.

Timko subsequently identified Dawn in the videotape, and on January 12, 2010, Officer Steve Creasey of the West Terre Haute Police Department contacted the Department of Child Services and arranged for a case worker to talk with A.V. Additionally, on January 14, 2010, Timko agreed to meet with Detective Tony Guinn of the Indiana State Police to give a recorded statement. Timko admitted that Dawn had used their camera to make pornographic videos.

The police officers also interviewed Dawn and she admitted that she knew Timko had molested A.V. Dawn also implicated Timko as the individual who filmed the video. Appellant's App. p. 141. Dawn also believed that Timko had put drugs in the girls' drinks because they were not moving during the video.

Dawn then admitted to the detectives that Timko had performed sexual acts on the twins. However, she also told the police that Timko could not be seen in the video because he had edited it, was trying to "hang her" for having an affair, and was planning

4

to leave him.  Id.  Dawn told the detectives that Timko had performed sexual acts on the twins during the incident that was on the DVD recording.

On January 15, 2010, Timko was charged as follows:

Count I, Child Molesting, a class A felony:  On or about October 8, 2005, in Vigo County, . . . Timko, . . . being a person of at least twenty-one . . . years of age, did then and there knowingly submit to sexual intercourse or deviate sexual conduct with A.V., a child under the age of fourteen years, to-wit: eight . . . years of age, in violation of I.C. 35-42-4-3(a)(1).

Count II, Child Molesting a class A felony:   On or about October 8, 2005, in Vigo County, . . . Timko, . . . being a person of at least twenty-one . . . years of age, did then and there knowingly submit to sexual intercourse or deviate sexual conduct with B.V., a child under the age of fourteen years, to-wit: eight . . . years of age, in violation of I.C. 35-42-4-3(a)(1).

Count III, Criminal Deviate Conduct, a class A felony:   On or about October 8, 2005, in Vigo County, . . . Timko, did then and there knowingly wrongly cause A.V. to perform or submit to deviate sexual conduct when A.V. was unaware that the conduct was occurring; the commission of said act being facilitated by furnishing the victim, without her knowledge, with a drug or controlled substance, in violation of I.C. 35-42-4-2(a)(2).

Count IV, Criminal Deviate Conduct, a class A felony:  On or about October 8, 2005, in Vigo County, . . . Timko, did then and there knowingly wrongly cause B.V. to perform or submit to deviate sexual conduct when B.V. was unaware that the conduct was occurring; the commission of said act being facilitated by furnishing the victim, without her knowledge, with a drug or controlled substance, in violation of I.C. 35-42-4-2(a)(2).

Count V, Child Exploitation, a class C felony:  On or about October 8, 2005, in Vigo County, . . . Timko, did then and there knowingly manage, produce, film, videotape or create a digitized image of any performance or incident that included sexual conduct by a child under the age of eighteen . . . . to wit: by recording and/or participating in an audio video recording or

5

deviate conduct being performed on once or more child eight . . . years of age, in violation of I.C. 35-42-4-4(b)(1).

Appellant's App. p. 2-3.

On January 20, 2011, Timko's stepbrother turned over a box to the police that contained 179 DVDs and CDs and a video camera. Detective Guinn discovered another DVD that was a copy of the same DVD that Timko had provided to the police.

Following a two-day jury trial, Timko was found guilty as charged. During the sentencing hearing that commenced on March 25, 2011, the trial court identified the harm suffered by the victims, Timko's position of trust over the girls, and his criminal history as aggravating factors. The trial court found no mitigating circumstances.

The trial court then sentenced Timko to the Department of Correction (DOC) to thirty years on Counts I through IV and to eight years of Count V, with the sentences on Counts I through III as to A.V., to run concurrent to one another. The sentences on Counts II and IV as to B.V. were ordered to run concurrent to each other, but they were also ordered to run consecutively to the sentences that were imposed on Counts I and II. Finally, the sentence imposed on Count V was ordered to run concurrent to the other sentences, for an aggregate term of sixty years.

The trial court then found that Timko was a "credit restricted felon" under Indiana Code section 35-41-1-5.5, for purposes of determining credit time, and for time spent prior to trial and sentencing. Thus, the trial court determined that Timko was only entitled to one day of credit for every six days that he spent in jail. Timko now appeals.

6

## DISCUSSION AND DECISION

### I.  Sufficiency of the Evidence

Timko challenges the sufficiency of the evidence as to all of his convictions.  Timko maintains that the convictions must be set aside because the State failed to prove all of the elements of the charged offenses.  He further maintains that Dawn's testimony was unbelievable and incredibly dubious.

In reviewing challenges to the sufficiency of the evidence, we do not reweigh the evidence or judge witness credibility.  McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005).  We consider only the probative evidence and reasonable inferences supporting the trial court's decision and affirm unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt."  Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000).  We respect the factfinder's exclusive province to weigh conflicting evidence.  McHenry, 820 N.E.2d at 126.   Finally, we note that the uncorroborated testimony of one witness is sufficient to sustain a conviction.  Carter v. State, 754 N.E.2d 877, 880 (Ind. 2001).

The exception to this standard of review is the "incredible dubiosity" principle, which permits an appellate court to reweigh the evidence and judge the credibility of a witness.  Gregory v. State, 885 N.E.2d 697, 704-05 (Ind. Ct. App. 2008), trans. denied.  This exception applies only where a sole witness presents inherently improbable and uncorroborated testimony.  Id. at 705.  For testimony to be so inherently incredible that it is disregarded based on a finding of "incredible dubiosity," the witness must present

testimony that is "inherently contradictory, wholly equivocal or the result of coercion, and there must also be a complete lack of circumstantial evidence of the defendant's guilt." Clay v. State, 755 N.E.2d 187, 189 (Ind. 2001). Reversal under this rule is rare and applicable only where the testimony of a single witness is so convoluted and contrary that it "runs counter to human experience and that no reasonable person could believe it." Edwards v. State, 753 N.E.2d 618, 623 (Ind. 2001).

## A. Child Molesting

In this case, the State charged Timko with one count of child molesting, a class A felony, as to each of the victims. As noted above, the State alleged that Timko, who was at least twenty-one, knowingly submitted to sexual intercourse or deviate sexual conduct with "[A.V. and B.V., children] under the age of fourteen years." Appellant's App. p. 2. And pursuant to Indiana Code section 35-41-1-9, deviate sexual conduct is defined as an act that involves either 1) the sex organ of one person and the mouth or anus of another person; or 2) the penetration of a person's sex organ by an object.

Timko acknowledges that Dawn testified that he performed oral sex on A.V. and B.V. on the same night that the video of her molesting the girls had been recorded. Tr. p. 195-96, 198, 222. Dawn also testified that Timko put Xanax in the girls' drinks. It is undisputed that Dawn can be seen performing oral sex on each of the girls and inserting her finger into each girl's vagina. Dawn acknowledged that Timko was filming these episodes.

8

Dawn's testimony aside, it is also not disputed that the video shows that the girls appear to be drugged because they remain motionless despite being touched and moved in ways that one would expect to provoke a reaction of some kind. Tr. p. 231. And, as discussed above, both girls testified that they were sometimes given "nasty" tasting juice to drink when they stayed with Timko and Dawn. Id. at 417-18, 428-29.

This evidence all corroborates Dawn's claims that the girls were drugged prior to the molestation, and Timko's contentions under the incredible dubiosity rule fail. Indeed, for purposes of negating application of the "incredible dubiosity" rule, a victim's testimony is corroborated when the account matches physical items or other facts established by independent evidence. See Buckner v. State, 857 N.E.2d 1011, 1017-18 (Ind. Ct. App. 2006) (holding that the victim's account of a sexual attack was corroborated when physical signs consistent with the account were established by other proof).

Additionally, Dawn's testimony established that Timko acted as an accomplice to Dawn's actions seen on the video, and he independently performed oral sex on each of the girls that evening. Finally, we conclude that the jury could reasonably infer from the nature of the acts performed on each girl and the fact that Timko recorded the molestation on video that he and Dawn molested the girls for the purpose of arousing or satisfying their sexual desires. See Kanady v. State, 810 N.E.2d 1068, 1069-70 (Ind. Ct. App. 2004) (holding that specific intent can be proven by circumstantial evidence and inferred from the natural consequences of the acts performed). In light of these circumstances, we

9

conclude that the evidence was sufficient to support Timko's convictions for class A felony child molesting.

### B. Criminal Deviate Conduct

As set forth above, the State alleged in Counts III and IV that Timko and Dawn supplied each of the girls with Xanax without their knowledge and, while the girls were unaware that the conduct was occurring, knowingly caused each girl to perform or submit to deviate sexual conduct.

Although Timko maintains that the convictions must be set aside because the State failed to show that the girls were "passed out or incoherent" during the episode, appellant's br. p. 18, it was established at trial that the girls appear motionless through the video. Tr. p. 231. Although A.V. recalled waking up after the molestation incident that was seen in the video, B.V. could not recall anything that happened to her. Id. at 424, 429-32.

As discussed above, Dawn testified that Timko drugged the girls by placing crushed Xanax in their drinks. Tr. p. 199. The girls testified that the drinks tasted "nasty," and B.V. recalled that they went to bed shortly after consuming the drinks. Given this evidence, the jury could reasonably conclude that the girls must have been unconscious and unaware of what was occurring for them to be able to remain entirely motionless while Timko and Dawn were performing various acts of molestation and criminal deviate conduct upon them. In short, we conclude that the evidence presented as to both of these offenses is more than sufficient to sustain the jury's conclusion that

10

Timko had drugged the girls and caused them to be unaware of the acts that he and Dawn performed on them.

## C. Child Exploitation

As for this offense, Timko maintains that the conviction must be set aside because Dawn's testimony was "incredibly dubious" and that the State failed to prove that the videotape of A.V. and B.V. was made with the intent to satisfy or arouse the sexual desires of any person.

In accordance with Indiana Code section 35-42-4-4(b)(1):

(b) A person who knowingly or intentionally:

> (1) manages, produces, sponsors, presents, exhibits, photographs, films, videotapes, or creates a digitized image of any performance or incident that includes sexual conduct by a child under eighteen (18) years of age;

> (2) disseminates, exhibits to another person, offers to disseminate or exhibit to another person, or sends or brings into Indiana for dissemination or exhibition matter that depicts or describes sexual conduct by a child under eighteen (18) years of age; or

> (3) makes available to another person a computer, knowing that the computer's fixed drive or peripheral device contains matter that depicts or describes sexual conduct by a child less than eighteen (18) years of age;

commits child exploitation, a Class C felony.

Notwithstanding Timko's claims, we note that the incredible dubiosity rule does not apply in this instance because the record does not reflect that Dawn's testimony is either inherently improbable or wholly uncorroborated.

In this case, Dawn's testimony was corroborated by other evidence and her description of the events and her actions were consistent with the videotape that was admitted into evidence. Dawn's testimony that Timko drugged the girls by placing Xanax in their drinks was corroborated by both the testimony of the girls and the fact that each of the girls appeared nonresponsive in the video in a manner consistent with being drugged. Tr. p. 199, 231, 417-18, 428-29. A.V.'s memory of waking that evening corroborated Dawn's testimony, and both girls' testimony was consistent with the testimony that both Dawn and Timko had told the girls' mother that A.V.'s memory was only a dream. Id. at 200-03, 418-20, 429-32. As a result, because Dawn's testimony was corroborated on several points, the incredible dubiosity rule is not applicable in this instance. Buckner, 857 N.E.2d at 1017-18.

Finally, the testimony sufficiently established that Timko video taped the molestation of A.V. and B.V. for the purpose of satisfying his or someone else's sexual desire. More particularly, Dawn testified that Timko held the camera and recorded the molestation of the girls on videotape that was admitted into evidence. Tr. p. 198-99, 209, 222. Timko was in possession of the DVD, and A.V. recalled waking up and to find Timko standing over her attempting to place her hand on his penis while her underwear was pulled down. Id. at 429-32. This evidence supports the jury's conclusion that the

12

video was created for the purpose of satisfying either Timko's sexual desires or someone else's because that is the natural and probable purpose and consequence of creating such a recording. Hence, we decline to set aside Timko's conviction for child exploitation.

## II. Double Jeopardy Concerns

Timko next asserts that double jeopardy principles bar his convictions on two counts of sexual deviate conduct. More specifically, Timko asserts that these offenses were not established by separate and distinct facts apart from the evidence that was used to prove the two counts of child molesting. In other words, Timko maintains that the same evidence the State presented to support the child molesting convictions was used to prove the criminal deviate conduct charges.

In resolving this issue, we note that Article I, section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." Two or more offenses are the same offense if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. Richardson v. State, 717 N.E.2d 32, 49 (Ind. 1999). We review de novo whether convictions violate double jeopardy principles. Goldsberry v. State, 821 N.E.2d 447, 458 (Ind. Ct. App. 2005).

> The standard for evaluating an alleged double jeopardy violation is well-settled:
>
> two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to

convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.

Id.

The "statutory elements test" referenced in Richardson is the same test enunciated in Blockburger v. United States, 284 U.S. 299 (1932). Brown v. State, 912 N.E.2d 881, 896 (Ind. Ct. App. 2009), trans. denied. That is, multiple convictions will not be precluded if each statutory offense requires proof of an additional fact that the other does not. Robinson v. State, 835 N.E.2d 518, 522 (Ind. Ct. App. 2005).

To establish a violation under the actual evidence test, the defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the elements of a second challenged offense. Richardson, 717 N.E.2d at 53. The possibility must be reasonable, not speculative or remote. Griffin v. State, 717 N.E.2d 73, 89 (Ind. 1999). Our Supreme Court has clarified this test by holding that as long as "each conviction require[s] proof of at least one unique evidentiary fact," no violation of the actual evidence test occurs. Bald v. State, 766 N.E.2d 1170, 1172 (Ind. 2002). Dual convictions cannot stand if a defendant demonstrates a reasonable probability that the evidentiary facts used by the fact-finder to establish elements of one offense may also have been used to establish the essential elements of a second challenged offense. Wise v. State, 719 N.E.2d 1192, 1201 (Ind. 1999).

In this case, Timko concedes that his convictions do not violate the statutory elements test. Appellant's Br. p. 19. Rather, he maintains that

14

[He] was convicted of one count each of Class A felony child molesting and Class A criminal deviate conduct as to A.V. and B.V. [Because] the "oral sex" and furnishing A.V. and B.V., without their knowledge, the drug Xanax occurred together, it is highly likely that the jury used the same evidentiary facts to convict him of both crimes. There was no independent and distinct evidence of multiple occasions of abuse to A.V. and B.V.

Appellant's Br. p. 20.

Notwithstanding these contentions, Timko acknowledges that his convictions on those counts required additional proof that he drugged the girls without their knowledge. That proof was not required to sustain his convictions for class A felony child molesting under Counts I and II. In other words, each of Timko's convictions for criminal deviate conduct required evidence that was not required for his child molestation convictions.

Both crimes required that he performed criminal deviate conduct on each girl, either by oral sex or digital penetration. Performing oral sex on each girl constituted child molesting as a class A felony because Timko did so while he was over the age of twenty-one and the girls were under the age of fourteen. I.C. § 35-42-4-3(a)(1). However, the jury was not required to consider Timko's age when deciding if he committed the offenses of criminal deviate conduct that were alleged in Counts III and IV. Instead, the jury had to decide if Timko had administered Xanax to the girls without their knowledge and whether the girls were unaware of what was happening to them as a result. I.C. § 35-42-4-2(a)(2).

As discussed above, the evidence presented at trial and the lack of the girls' response on the video demonstrates that the jury could reasonably conclude that Timko

15

had drugged the girls and caused them to be unaware of the acts that he and Dawn had performed. Indeed, the video and testimony depict the multiple acts of criminal deviate conduct committed against each victim. More specifically, Dawn repeatedly performs oral sex on each girl and penetrates their vaginas with her fingers. Dawn further testified that in portions of the video that were redacted, Timko also performed oral sex on the victims. Id. at 198. As a result, Timko's act of drugging the girls aided both his own molestation of the girls and the multiple acts that Dawn committed against each girl.

The act of drugging, of course, facilitated the act of molestation, but that will always be true in instances where the charge of criminal deviate conduct is enhanced when drugs are administered to the victim. Although it is true that these acts occurred close in time, that flows naturally from the fact that the administration of the drugs without the victim's knowledge is a necessary precursor to committing the acts against them while they are unconscious and unaware of what was occurring.

Timko's acts amounted to child molesting as a class A felony because he was over the age of twenty-one and his victims were only eight years old. On the other hand, his remaining conduct constituted criminal deviate conduct as a class A felony because he rendered the victims unable to know what was happening to them by drugging them without their knowledge. In short, the jury had to consider additional evidentiary facts to find Timko guilty of each crime that were not necessary to his conviction for the other. As a result, we conclude that Timko's convictions do not violate the actual evidence test

16

and are not prohibitive of double jeopardy principles. Thus, we decline to set aside Timko's criminal deviate conduct convictions.

### III. Credit Restricted Felon

Timko next claims that the trial court's application of the 2008 credit restricted felons rule set forth in Indiana Code section 35-50-6-3(d) violates the constitutional prohibition of ex post facto laws. Specifically, Timko argues that he is entitled to a revision of his credit class offender status.

Indiana Code section 35-50-6-3(d) provides that a person who is classified in Class IV as a credit restricted felon is entitled to one day of credit time for every six days of time served while awaiting trial or sentencing. And a companion statute, Indiana Code section 35-41-1-5.5 defines a "credit restricted felon" as a person who has been convicted of at least one of the following offenses:

 (1) Child molesting involving sexual intercourse or deviate sexual conduct
(IC 35-42-4-3(a)), if:

(A) the offense is committed by a person at least twenty-one (21) years of age; and

(B) the victim is less than twelve (12) years of age.

(2) Child molesting (IC 35-42-4-3) resulting in serious bodily injury or death.

Indiana Code section 35-50-6-3(d) became effective on July 1, 2008, and applied only to persons convicted of offenses after June 30, 2008. And this court has previously determined that it would be an ex post facto violation to apply the credit restricted felon

17

statute to someone who committed criminal offenses before the statute became effective on July 1, 2008. Upton v. State, 904 N.E.2d 700, 706 (Ind. Ct. App. 2009), trans. denied.

As noted above, Timko committed the charged offenses on October 8, 2005, which was before the statute took effect on July 1, 2008. Thus, the State concedes, and we agree, that the trial court erroneously assigned Timko to Class IV credit time. Therefore, we must remand this cause to the trial court to correct the judgment and reassign Timko's credit time classification and recalculate the amount credit time to which he is entitled.[5]

## IV. Sentencing

## A. Abuse of Discretion

Timkow argues that he was improperly sentenced because the trial court abused its discretion in ordering him to serve consecutive sentences. In essence, Timkow maintains that the State failed to identify several mitigating factors that were apparent from the record, and the aggravating factors that the trial court identified did not warrant the imposition of consecutive sentences.

---

[5] The remaining provisions of Indiana Code section 35-50-6-3, which pertains to offender credit time classes, provide that

 (a) A person assigned to Class I earns one (1) day of credit time for each day the person is imprisoned for a crime or confined awaiting trial or sentencing.

(b) A person assigned to Class II earns one (1) day of credit time for every two (2) days the person is imprisoned for a crime or confined awaiting trial or sentencing.

(c) A person assigned to Class III earns no credit time.

18

Sentencing determinations are within the trial court's discretion and will be reversed only for an abuse of discretion. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. Id. It is within the trial court's discretion to impose consecutive sentences if at least one aggravating factor is found in support of the sentence. Ortiz v. State, 766 N.E.2d 370, 377 (Ind. 2002).

We also note that the trial court must explain its reason for imposing the sentence including: 1) the identification of significant aggravating and mitigating circumstances; 2) the facts and reasons that lead the court to find those circumstances; and 3) the court's evaluation and balancing of those circumstances in support of the sentence imposed. Plummer v. State, 851 N.E.2d 387, 390 (Ind. Ct. App. 2006).

In this case, the trial court identified the following aggravating circumstances: 1) the harm to the victims was significant and greater than necessary to prove the offenses; 2) the victims were only eight years old; 3) Timko abused a position of care, custody, and trust with his victims; and 4) Timko's criminal history. Tr. p. 646.

As to the first aggravating factor, we note that A.V. submitted a letter to the trial court at the sentencing hearing describing the lasting fear, trust, and relationship problems that she and her sister have endured since the incidents. Id. at 634-35. A.V. explained that children at school are aware of the video and that she and her sister are constantly tormented as a result of Timko's actions. Id. at 635. A.V. fears both Timko

19

and Dawn, and continues to dream about the incident. A.V. is also afraid that she is being watched or videotaped. Id. In short, we find that the trial court did not abuse its discretion in identifying the substantial harm that A.V. and B.V. suffered as an aggravating factor.[6]

Next, Timko claims that the trial court should have identified his employment history, the absence of prior felony convictions, and the fact that incarceration would result in a hardship to his dependent son, as mitigating factors. Although the trial court is not required to find mitigating circumstances, it may not ignore mitigating factors that are significant and clearly supported by the record. Echols v. State, 722 N.E.2d 805, 808 (Ind. 2000). Indeed, the finding of mitigating circumstances is not mandatory. Grund v. State, 671 N.E.2d 411, 418 (Ind. 1996). Determining whether certain circumstances are mitigating is within the court's discretion, and there is no obligation to explain why the proffered factors are not found to be mitigating. Widener v. State, 659 N.E.2d 529, 533 (Ind.1995). Additionally, the trial court is not obligated to weigh the evidence regarding the proposed mitigating circumstances as the defendant does. Hammons v. State, 493 N.E.2d 1250, 1255 (Ind. 1986).

In this case, Timko fails to advance any argument that his proffered mitigators were significant. Moreover, while a trial court may find the absence of prior felony

---

[6] Timko does not dispute the validity of the other aggravating circumstances that the trial court found including the victims' ages, the fact that he has a criminal history, or that he abused his position of trust and care with the children.

convictions to be a mitigating factor, there is no requirement that it do so. Taylor v. State, 681 N.E.2d 1105, 1111-12 (Ind. 1997).

We similarly reject Timko's contention that the trial court erred in not identifying the hardship that his imprisonment would have on his dependent son as a mitigating factor. Indeed, incarceration will always be a hardship on dependents. Vazquez v. State, 839 N.E.2d 1229, 1234 (Ind. Ct. App. 2005). In order to merit consideration as a mitigating factor, however, the hardship must be "unusual." Benefield v. State, 904 N.E.2d 239, 247 (Ind. Ct. App. 2009), trans. denied. To establish undue hardship, Timko was required to present evidence of special circumstances. See Dowdell v. State, 720 N.E.2d 1146, 1154 (Ind. 1999) (observing that the defendant failed to show "unusual hardship" when it was established that the defendant was the father of an eighteen-month-old child but there was no order that he was to pay support). As in Dowdell, Timko failed to present any evidence of special circumstances regarding the hardship that his incarceration would have on his son. As a result, the trial court did not err in this regard.

As for employment, Timko's counsel remarked at the sentencing hearing that Timko "has a steady employment history." Tr. p. 637. As we pointed out in Stout v. State, 834 N.E.2d 707, 711 (Ind. Ct. App. 2005), a trial court is not required to recognize work history as a mitigating circumstance when the defendant does not present evidence of a consistent work history. Indeed, many people are gainfully employed such that a trial court is not required to identify employment as a mitigating factor. Newsome v.

21

State, 797 N.E.2d 293, 301 (Ind. Ct. App. 2003). In light of the circumstances here, we conclude that the trial court did not abuse its discretion when it did not identify Timko's "steady employment history" as a significant mitigating circumstance.

In sum, we cannot say that the trial court abused its discretion when it did not identify any mitigating circumstances. And, as noted above, the trial court found several aggravating factors when deciding to impose consecutive sentences. And it is apparent that the trial court determined that the imposition of consecutive sentences best reflects the seriousness of Timko's crimes because he had committed separate offenses against the two separate victims. That said, we conclude that the trial court did not abuse its discretion in sentencing Timko.

### B. Inappropriate Sentence

Timko also maintains that the sixty-year aggregate sentence that the trial court imposed was inappropriate when considering the nature of the offenses and his character. Specifically, Timko argues that sixty years is excessive because his criminal history is not significant and he "did nothing to make the offenses particularly egregious [because] he did not physically force the girls to submit to oral sex nor did he threaten or physically hurt [them]." Appellant's Br. p. 29.

We have the constitutional authority to revise a sentence authorized by statute if, "after due consideration of the trial court's decision," it is found that the sentence imposed is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). With regard to appropriateness review, the

22

defendant carries the burden to convince the appellate court that the sentence imposed is inappropriate. Anglemyer v. State, 868 N.E.2d 482, 494 (Ind. 2007). The principal role of appellate review is to "leaven the outliers;" it is not to achieve a perceived "correct" result. Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008).

As for the nature of the offenses, the evidence shows that both A.V. and B.V. trusted Timko and Dawn. In fact, the girls referred to Timko as "Uncle Kevin." Tr. p. 193, 415, 426-27. Timko drugged the girls with Xanax and took advantage of them without their knowledge. Id. at 199. He and Dawn molested the girls and videotaped the incidents, thus compounding the harm suffered by A.V. and B.V. State's Ex. A. And in an apparent attempt at revenge against Dawn, Timko redacted his own participation from the video and gave the edited version to the police. Id. at 198, 217-20, 222, 358, 367-80, 643.

As discussed above, both girls have been tormented by school classmates who know about the offenses and the videotape. Id. at 635. The girls fear for their safety and they both have trust and relationship issues. They have nightmares and are afraid that they are being watched and videotaped. Tr. p. 634-35. In short, Timko's arguments that his sentence should be revised when considering the nature of the offenses are unavailing.

Turning to Timko's character, the evidence shows that he abused the girls' trust, has consistently denied responsibility for the offenses, and has falsely accused others of participating in the crimes. Appellant's App. p. 168.

23

Timko also has a criminal history that reveals a pattern of disregard for the law and authority. More specifically, Timko has been previously convicted of battery resulting in bodily injury, operating a vehicle while intoxicated, and possession of marijuana. Also, when Timko was sentenced on the instant offenses, there were charges pending in another case, including possession of marijuana, possession of paraphernalia, and false informing.

Finally, the record reflects that Timko has a lengthy history of abusing prescription drugs, marijuana, alcohol, methamphetamine, cocaine, and Vicodin. Appellant's App. p. 115. In our view, such is particularly significant in light of the role that drugs played in enabling him to abuse his victims in this case. And despite previous run-ins with the law, Timko has not been deterred from criminal conduct, in that he has continued to disregard the law. After analyzing the nature of the offenses and Timko's character, we do not find the sixty-year aggregate sentence inappropriate.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions that the trial court correct the judgment and recalculate the amount of credit time to which Timko is entitled.

DARDEN, J., concurs.

BAILEY, J., concurring in part and dissenting in part.

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KEVIN M. TIMKO, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 84A05-1104-CR-228 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

**BAILEY, Judge, concurring in part and dissenting in part**.

Timko concedes that his convictions do not violate the <u>Blockburger</u> statutory elements test, and the majority applies the actual evidence test of <u>Richardson</u> to conclude that there has been no double jeopardy violation. I do not believe that the double jeopardy inquiry ends there.

Aside from the constitutional actual evidence test, our Indiana Supreme Court has identified five common law or statutory double jeopardy categories: (1) conviction and punishment for a crime which is a lesser-included offense of another crime for which the defendant has been convicted and punished, (2) conviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been

25

convicted and punished, (3) conviction and punishment for a crime which consists of the very same act as an element of another crime for which the defendant has been convicted and punished, (4) conviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished, and (5) conviction and punishment for the crime of conspiracy where the overt act that constitutes an element of the conspiracy charge is the very same act as another crime for which the defendant has been convicted and punished. Guyton v. State, 771 N.E.2d 1141, 1143 (Ind. 2002).

Counts I and II, Child Molesting, allege Timko's sexual intercourse or deviate sexual conduct with A.V. and B.V., respectively.[7] Counts III and IV, Criminal Deviate Conduct, allege Timko's deviate sexual conduct with A.V. and B.V., respectively. As such, pursuant to Counts I and II, the jury was asked to decide whether Timko committed sexual intercourse or criminal deviate conduct with the victims. Pursuant to Counts III and IV, the jury was asked to decide whether Timko committed criminal deviate conduct with the victims. The State did not separately charge Timko with administering drugs to A.V. and B.V.

Count III alleges that Timko "cause[d] A.V. to perform or submit to deviate sexual conduct when A.V. was unaware that the conduct was occurring; the commission of the said act being facilitated by furnishing the victim, without her knowledge, with a drug or controlled substance[.]" (App. 2.) (emphasis added.) Count IV makes the same

---

[7] **Perplexingly, Counts I and II allege that Timko "did submit" to sexual acts as opposed to "did commit" the acts. (App. 2.)**

allegation with respect to B.V. Although these counts contain additional descriptive (surplus) language, specifically "when [the victim] was unaware that the conduct was occurring," the sole act charged is criminal deviate conduct. The language of Counts III and IV contain an explanation of how the said act, the charged act, was facilitated.

The proof adduced at trial established a single sexual act with regard to each victim, criminal deviate conduct (and also established that the acts were videotaped). Timko may not be twice punished for a single act. I agree that there is sufficient evidence that Timko committed Class A felony Criminal Deviate Conduct against multiple victims, and that his sentences should be consecutive. I dissent from the majority opinion only insofar as it affords Timko no double jeopardy relief.